COMMODITY FUTURES TRADING COMMISSION, Plaintiff-Appellant,

v.

BOARD OF TRADE OF the CITY OF CHICAGO, Defendant-Appellee.

COMMODITY FUTURES TRADING COMMISSION, Plaintiff-Appellant,

v.

CHICAGO MERCANTILE EXCHANGE, INC., Defendant-Appellee.

No. 80–2431, 80–2439.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1981.

Decided Aug. 17, 1981.

---

Gregory C. Glynn, Assoc. Gen. Counsel, Commodity Futures Trading Commission, Washington, D. C., for plaintiff-appellant.

Donald J. Duffy, Jerrold E. Salzman, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD and PELL, Circuit Judges, and CRABB,* Chief District Judge.

PELL, Circuit Judge.

The Commodity Futures Trading Commission (CFTC or Commission), sought preliminary injunctive relief against the Board of Trade of the City of Chicago (CBOT), appellee in No. 80–2431, and the Chicago Mercantile Exchange (CME), appellee in No. 80–2439, for allegedly violating section

5a(12) of the Commodity Exchange Act, 7 U.S.C. § 7a(12), and Commission Rule 1.41, 17 C.F.R. § 1.41 (1980). An emergency judge granted the Commission's motions for temporary restraining orders effective July 15, 1980, but these were vacated two days later by Judge Perry. After accelerated discovery, Judge Perry heard the cases simultaneously to consider the plaintiff's request for preliminary injunctive relief. The court denied the Commission's request for preliminary injunctions and granted judgment on the merits in favor of each defendant.

Because a review of all the contentions raised and evidence adduced below is unnecessary at this juncture, we present only an abbreviated summation of the controversy. On August 2, 1977, the CFTC approved CBOT's application for designation as a contract market in long term Treasury bond futures. CBOT commenced trading contracts with delivery months of September, December, March and June (the September cycle), and subsequently listed new months in the September cycle as the existing ones expired.[1] On July 2, 1980, however, CBOT expanded its contract delivery months to include August, November, February, and May (the August cycle) without first seeking Commission approval.

The Commission designated the International Monetary Market, predecessor to CME, as a contract market in 13-week Treasury bills on November 26, 1975. Until July 2, 1980, CME traded Treasury bill contracts for delivery in December, March, June and September (the December cycle). CME began trading a January cycle (January, April, July and October), however, on July 2, 1980, without prior CFTC approval.

The Commission alleges that both exchanges violated 7 U.S.C. § 7a(12) which, in relevant part, requires contract markets to

---

* Barbara B. Crabb, Chief Judge of the United States District Court for the Western District of Wisconsin, is sitting by designation.

1. Even though a cycle may remain constant over the years, as each delivery month passes, future delivery months within the same cycle must be added to correspond with the changing years just as future delivery months within a new cycle would have to be listed. Thus, the addition of future delivery months does not itself imply a change in cycle.

submit to the Commission for its approval all bylaws, rules, regulations, and resolutions made or issued by such contract market, or by the governing board thereof or any committee thereof which relate to terms and conditions in contracts of sale to be executed on or subject to the rules of such contract market or relate to other trading requirements except those relating to the setting of levels of margin.[2]

The appellees contend that provisions in their original applications for designation as contract markets allowed the addition of new contract months without prior Commission approval. CBOT Regulation 1805.-01 provided that "[t]rading in long term U.S. Treasury bonds may be conducted in the current month and any subsequent months as determined by the Financial Instruments Committee or the Board [of the CBOT]." Similarly, CME Rule 3202A stipulated that "[f]utures contracts shall be scheduled for trading during such hours and delivery in such months as may be determined by the Board of Governors [of the CME]." Although the Commission has since effected amendments to both exchange rules to require prior submission of additional contract month listings to the CFTC, those amendments are prospective only and limited to trading in the respective contract markets for Treasury bonds and bills. Rules 7.100, 7.200, 45 Fed.Reg. 51520, 51527 (August 1, 1980).

The appellees presented evidence tending to show that the purpose of the amendments may well have been to eliminate existing discretion of the exchanges to add delivery months without prior Commission approval. Although CBOT asserted that the Commission had never previously required it to submit additional listings, CME apparently had submitted additional listings to the Commission on a few occasions. The CFTC essentially argued that while it may

not have demanded submission for the routine addition of months within existing cycles, the expansion of months into different new cycles did require prior Commission approval. The exchanges countered by citing some examples of other commodities in which the addition of months in new delivery cycles was apparently accomplished without prior Commission approval.

The district court commenced a hearing "on the motion[s] for a preliminary injunction." No suggestion of consolidation occurred until after all parties had rested their cases when CME asked the court to consider consolidation. The following day, the court accordingly rendered a final judgment on the merits.

■ Although Fed.R.Civ.P. 65(a)(2) does permit a court to order consolidation of trial on the merits with a preliminary injunction hearing, consolidation should not deprive the parties of a full opportunity to discover and present all of their evidence. Consequently,

the parties should normally receive clear and unambiguous notice . . . either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases. A litigant applying for a preliminary injunction should seldom be required either to forego discovery in order to seek emergency relief, or to forego a prompt application for an injunction in order to prepare adequately for trial. Different standards of proof and of preparation may apply to the emergency hearing as opposed to the full trial.

*Pughsley v. 3750 Lake Shore Drive Cooperative Building*, 463 F.2d 1055, 1057 (7th Cir. 1972). In *Pughsley*, after a two-day preliminary injunction hearing, and only eleven days after the complaint was filed, the district court dismissed the case. Consolidation was never explicitly ordered.[3] On ap-

---

2. The Commission also alleges violation of Commission Rule 1.41, 17 C.F.R. § 1.41 (1980) which defines the term "rule," stipulates that a "reviewable rule" generally includes any rule relating to the terms and conditions of futures

contracts or other trading requirements, and describes the procedure for review.

3. After the first day of the hearing, the trial judge advised plaintiff's counsel that "I am going to insist . . . that whatever your total

peal, this court reversed and remanded the district court's decision granting judgment on the merits. Because the plaintiff's claim was not frivolous and sufficient notice of consolidation was not afforded, the court determined that the plaintiff should be given an opportunity to present whatever additional evidence discovery might uncover. *Id.* at 1056.

In the case at bar, the final decision was rendered approximately three weeks after the complaints were filed. Discovery lasted only one week and was explicitly limited by the court to those witnesses and issues relevant to the preliminary injunction hearing. No notice of consolidation was afforded until after all parties had rested their cases when CME requested consolidation. Although the Commission protested[4] that (1) the limited discovery was insufficient to allow presentation of the case on the merits, and (2) it had been unaware that consolidation was contemplated, the court granted final judgment the following day.

Notice of consolidation is particularly important where, as the plaintiff here alleges, the case may not be fully developed by the time of the preliminary hearing. *Pughsley v. 3750 Lake Shore Drive Cooperative Building*, 463 F.2d 1055, 1056 (7th Cir. 1972); *Gellman v. Maryland*, 538 F.2d 603, 605 (4th Cir. 1976). Evidence adduced at the preliminary injunction hearing may be incomplete because "[a] plaintiff putting on his case for temporary relief may hold back evidence, or, indeed, his case may not be fully developed. Thus it is important for him to know that when he puts on his evidence he is having his final 'day in court.'" 7 Moore's Federal Practice ¶ 65.-04[4] at 65–67 (2d ed. 1980). Numerous appellate courts have upset judgments granting relief on the merits where it appeared that the failure to give adequate

notice of consolidation may have deprived a party of the opportunity fully to present the case on the merits. *See, e.g., Gellman v. State of Maryland*, 538 F.2d 603 (4th Cir. 1976); *American Federation of Government Employees, Local 3319 v. Colburn*, 531 F.2d 314 (5th Cir. 1976) (per curiam); *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181 (10th Cir. 1975); *Pughsley v. 3750 Lake Shore Drive Cooperative Building*, 463 F.2d 1055 (7th Cir. 1972); *Eli Lilly & Co. v. Generix Drug Sales, Inc.*, 460 F.2d 1096 (5th Cir. 1972); *T.M.T. Trailer Ferry, Inc. v. Union de Tronquistas de Puerto Rico, Local 901*, 453 F.2d 1171 (1st Cir. 1971); *Nationwide Amusements, Inc. v. Nattin*, 452 F.2d 651 (5th Cir. 1971); *Puerto Rican Farm Workers ex rel. Vidal v. Eatmon*, 427 F.2d 210 (5th Cir. 1970) (per curiam); *Capital City Gas Co. v. Phillips Petroleum Co.*, 373 F.2d 128 (2d Cir. 1967).

The appellees contend that this court's opinion in *Socialist Workers Party v. Illinois State Board of Elections*, 566 F.2d 586 (7th Cir. 1977), aff'd, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979), controls this case. In *Socialist Workers*, the district court permanently enjoined the Chicago Board of Election Commissioners from enforcing certain unconstitutional provisions of a state statute. Although no hearing was held prior to the final judgment, the court of appeals rejected the defendants' contention that consolidation occurred without sufficient notice. The court indicated that surprise alone, without any showing of prejudice, would not mandate reversal. For that reason the court declined to upset the lower court's judgment because the facts were undisputed and the decision to enjoin rested solely upon legal grounds. *Id.* The purely legal nature of the issues involved was best illustrated by the district court's statement that "[i]njunctive relief ... is appropriate at this point. Any requirement [that new

---

case is, and I want to give you every reasonable opportunity to put it in, that you complete it before I request the defendants to go ahead." 463 F.2d at 1056. The appellate court found this admonition to be insufficient notice of consolidation.

4. We reject CME's argument that the Commission has not preserved its objection to consolidation. The Commission sufficiently objected to CME's suggestion to consolidate the hearings when CME first moved the court to consider consolidation and CFTC objected once again thereafter.

political parties and independent candidates seeking to be placed on the mayoral election ballot obtain over 25,000 signatures on nominating petitions] ... is *per se* excessive.... There is thus an absolute certainty of success on the merits for the plaintiffs on this claim." 433 F.Supp. 11, 22 n.21 (N.D.Ill.1977).

Unlike *Socialist Workers*, the outcome of the instant case does not depend solely upon the resolution of a purely legal issue. The appellees contend that because they admitted taking the actions charged, *i.e.*, listing additional cycles, no disputed factual issues remain. The resolution of this case, however, does require the unraveling of facts, and of disputed inferences permissibly drawn therefrom, pertaining to the Commission's actual course of conduct. The controversy here focuses upon whether the CFTC's approval of the appellees' original applications, combined with various statements made by Commission officials and the Commission's general course of conduct, implied that the appellees were originally granted discretionary authority over the selection of delivery months.

The Commission represents that it does have further relevant evidence to present and, moreover, that it should be permitted additional time for full discovery particularly with respect to the Commission's course of conduct and the impact of certain statements made by CFTC officials. We agree that the lack of adequate notice of consolidation has prejudiced the plaintiff by depriving it of a fair opportunity fully to develop and present its case. The final judgments on the merits therefore are vacated and remanded for a further hearing on the propriety of awarding permanent injunctive relief. We express no opinion on the merits.

For purposes of the preliminary injunctive relief requested, however, the district court's findings of fact are supported by the evidence and its considered decision clearly does not constitute an abuse of discretion. The court's denial of a preliminary injunction is therefore affirmed. *Pughsley v. 3750 Lake Shore Drive Cooperative Building*, 463 F.2d 1055, 1056 (7th Cir. 1972).

For the foregoing reasons, the judgment of the district court is affirmed in part, and vacated and remanded in part for further proceedings. For the purpose of Circuit Rule 18 we do not deem this case to have been tried.