**MIDWEST COMMUNITY COUNCIL, INC., et al., Plaintiffs,**

v.

**CHICAGO PARK DISTRICT, et al., Defendants.**

No. 79 C 3187.

United States District Court, N.D. Illinois, E.D.

June 7, 1983.

Gary T. Johnson, Franklin P. Auwarter, Robert J. Kriss, Mayer, Brown & Platt, Sybille C. Fritzsche, Kay Simon Grossman, Chicago, Ill., for plaintiffs.

Thomas A. Foran, Richard A. Devine, Douglas S. Moore, Foran, Wiss & Schultz, Chicago, Ill., for defendants.

Memorandum

LEIGHTON, District Judge.

The issue presented is whether this court, on its own motion, should consolidate this case, No. 79 C 3187, for trial with another one on its docket, No. 79 C 2242. Briefs have been filed in which defendants express their agreement with consolidation but plaintiffs object to one joint trial for both cases. The following is a description of the parties, the matter involved, the claims, and a summary of the allegations.

I

A. *This case, No. 79 C 3187.*

This is a civil rights class action filed on August 2, 1979 by eight complainants. One of them, the lead plaintiff, is a not-for-profit, tax exempt Illinois corporation that was established in 1946. Its members, almost all Negroes, are in over 300 block clubs in the west side neighborhoods of Chicago inhabited largely by members of the Negro race. The purpose of the corporation is to mobilize, coordinate and develop community life and resources to combat social and civic problems in the East Garfield Park area of the city.

The other plaintiffs are individuals, all Negroes: two mothers of three minors, and two senior citizens, who live respectively, in the 24th, 27th, and 28th Wards in the city of Chicago. Two of the individual plaintiffs, a mother and her minor child, live in the area served by community parks located in the 24th Ward and by Douglas Park, a sectional facility. The other individual plaintiffs, a mother, her two minor children, and the two senior citizens, live in an area served by community parks located in the 27th and 28th Wards of the city of Chicago and by Garfield Park, also a sectional facility. All of the plaintiffs bring this action on their behalf and on behalf of all other residents of Chicago wards which are inhabited largely by Negro persons, specifically,

Wards 2, 3, 4, 6, 16, 17, 20, 24, and 27 "who are similarly situated and injured by the discriminatory conduct complained of herein." A class, as urged by the plaintiffs, has been certified.

As the complaint now stands, amended and modified, there are seven defendants. One of them is the Chicago Park District, a municipal corporation existing under the laws of Illinois and funded through tax levies, bond issues, and federal assistance. This defendant, through its commissioners, administers, under Illinois law, a system of public parks consisting of approximately 580 facilities ranging in sizes from playgrounds which may consist of less than a city block, to community and neighborhood parks, which may be more than a a block in size, to sectional parks which may consist of thousands of acres. The other six defendants are the general superintendent of the park district, the president of the board, and four other commissioners, all of them appointed by the mayor of the city of Chicago.

The complaint is in two counts. Count I is brought under 42 U.S.C. § 1983 "for declaratory judgment and injunctive relief against the deprivation of rights, privileges, and immunities secured and protected by the Fourteenth Amendment of the United States Constitution." Plaintiffs allege therein, as to them and the class, that defendants, acting under color of state law, "have purposely discriminated against Black citizens on the basis of race in the allocation of recreational resources within the city of Chicago"; that the racial discrimination in the allocation of recreational resources by defendants has occurred continuously from 1970 to the present time; and that this may also have occurred before 1970. They claim that the racial discrimination in the allocation of recreational resources has taken numerous forms including, among other things, allocating substantially more money used in Chicago wards inhabited predominantly by Caucasians than in those wards populated largely by Negroes, even though each ward of the city contains approximately the same number of residents; "constructing and maintaining substantially more indoor and outdoor facilities in White wards than in Black wards [sic]"; refusing to repair and maintain indoor and outdoor facilities "located in Black wards in substantially the same condition as that of facilities located in White wards [sic]"; and in general discriminating against Negroes in all respects concerning the administration of the parks.

Plaintiffs further say that they and members of the class have been injured by defendants' illegal conduct; that their attempts to cause defendants to end their discriminatory conduct have failed; and that defendants have irreparably injured the plaintiffs and members of the class, and will continue to do so unless enjoined by this court. Plaintiffs state they have no adequate remedy at law; therefore they pray that this court enter a declaratory judgment that defendants' conduct has been and continues to be unlawful and in violation of the Fourteenth Amendment; that they be enjoined from continuing their unlawful conduct; that the court enter an order requiring defendants to present a plan to remedy the effects of their past and present unlawful conduct to include correcting all of the disparities and discriminations in the administration of the Chicago parks as alleged by plaintiffs in their complaint. Plaintiffs ask this court to grant them their costs, expenses, including attorney fees; and "that plaintiffs be granted such other or further relief as the court may deem to be just and proper."

In Count II plaintiffs assert claims under 42 U.S.C. § 2000d (1974), Title VI of the Civil Rights Act of 1964. Plaintiffs allege that this count "is a proceeding for a permanent injunction to restrain defendants from continuing their policies and practices of allocating recreational resources within the Chicago Park District on a racially discriminatory basis." They allege that the park district has received and continues to receive federal financial assistance as the sponsor of projects under the Land and Water Conservation Fund Act (Public Law 88–578, as amended). Plaintiffs then reallege paragraphs of Count I as incorporated

allegations in this count; and they say that "defendants have discriminated against Black citizens on the basis of race in the allocation of recreational resources within the city of Chicago." They then pray that this court enter a judgment declaring that defendants' conduct has been and continues to be unlawful in violation of Title VI of the Civil Rights Act of 1964; that defendants be enjoined from continuing their unlawful conduct; that the court require defendants to present a plan to remedy the effects of their past and present unlawful conduct which would include among other things, correction of the disparity in both indoor and outdoor facilities "between those within parks located in Black wards and those within parks located in White wards as expeditiously as possible [sic]"; and correct the disparities in the indoor and outdoor facilities on the grounds of Douglas Park, Garfield Park, and Ogden Park so that they are maintained and repaired compared to the way that Horner Park and Riis Park are maintained and repaired; that the programs administered by defendants together with personnel "available forthwith to residents of Black wards in numbers and quality substantially similar to those provided in White wards"; and that repair and maintenance of "existing facilities and parks located within Black wards to a level substantially equal to that in which these facilities are maintained in parks located with White wards [sic]." Plaintiffs pray that they be granted their costs, expenses, including attorney's fees; and that they "be granted such other or further relief as the court may deem to be just and proper."

Defendants have answered plaintiffs' amended complaint, and have admitted the allegations concerning defendants' official positions and functions; and deny all of plaintiffs' allegations that there has been any racial discrimination in the allocation of recreational resources within the Chicago Park District. As to Count II, defendants admit that the Chicago Park District has received and continues to receive federal financial assistance. Defendants assert the defenses that plaintiffs have failed to state a claim on which relief can be granted and have failed to state a claim for relief cognizable under Rule 23(b)(2) of the Federal Rules of Civil Procedure. They pray that the court enter judgment dismissing the amended complaint against them, with costs assessed against the plaintiffs.

### B. *The other case, No. 79 C 2242*

This suit, also a civil rights class action, was originally filed on June 2, 1979 by one plaintiff; but the complaint was amended with 35 Negro and Hispanic plaintiffs suing on behalf of themselves and others similarly situated, "all individual black, Latino or poor residents of the City of Chicago [sic]." Three of the plaintiffs, adult women, also sue as the mothers of four minor children. The defendants were the same as in 79 C 3187, with addition of the attorney for the Chicago Park District and two former park district commissioners. All of the natural persons named defendants are sued in their individual as well as their official capacities. The park system which plaintiffs describe in this case is the same as the one in No. 79 C 3187. However, the amended complaint contained seven rather than two counts. Two of them, for reasons not pertinent here, were dismissed by this court. Now, 17 of the original plaintiffs and four additional Negroes, have filed a second amended complaint in five counts, numbered I to V. The defendants are the same as in the earlier pleading with the exception of the park attorney who is no longer in the case; a former commissioner and a new one have been added as parties defendant. Plaintiffs assert five different theories of recovery, all of them based on alleged violations of the 14th Amendment to the United States constitution, certain provisions of the Illinois constitution, and certain federal civil rights statutes.

In Count I, the adult plaintiffs sue "on his or her own behalf and on behalf of all other black, Latino, or poor residents of Chicago who are injured by the various acts of discrimination alleged herein [sic]", the three adult women sue as mothers of four minor children. All plaintiffs assert claims under Title II of the Civil Rights Act of

1964, 42 U.S.C. § 2000a, *et seq.*, and under 42 U.S.C. § 1983. They allege that although under law, state and federal, the defendants were obliged not to deprive any one of them "of life, liberty or property without due process of law nor [deny them] the equal protection of the laws," defendants through their administration of the Chicago Park District system, have engaged in the practice of race discrimination in the allocation of resources for the parks so that those parks located in communities largely populated by Negroes were and are denied park resources, including state and federal funds, in a manner that results in racial disparities, to the injury of the plaintiffs and members of the class. They further allege that the situation about which they complain have been repeatedly brought to the attention of defendants by them and others, including various civic groups, but defendants have refused and failed to remedy the discrimination. They allege that they and members of the class have been affected by the discriminatory practices described in the complaint to their irreparable injury and damage. They pray for injunctive relief, temporary and permanent, declaratory judgment as to allocation of funds in a manner not violative of the equal protection clauses of the federal constitution and the cited provisions of the Illinois constitution, and an award of their costs, damages actual and punitive, attorney's fees, and "such other and further relief as this court shall deem equitable and proper."

In Count II, seven of the 21 plaintiffs assert a claim in equity for employment discrimination; they rely on the due process and equal protection clauses in the United States and Illinois Constitutions, and on 42 U.S.C. § 1983. They sue on their own behalf "and on behalf of all other black residents [sic] of Chicago who are injured by the various acts of discrimination alleged herein." The defendants are the same as in the other counts with the exception that the park district attorney is not named.

Plaintiffs allege that as of November 1, 1977, to and including the date the second amended complaint was filed, defendant Park District had in its job classifications the title "physical instructor", one that differentiated between "monthly" and "hourly" personnel. Monthly personnel were salaried employees who were entitled, among other things, to full-time employment, accrual of vacation, sick leave, seniority and pension rights; and were paid salaries significantly higher than were the hourly personnel, whose hours of employment varied at the discretion of the park district, who accrued no vacation, no sick leave, no seniority or pension rights; and who were paid significantly lower salaries than were monthly personnel. Four of the seven plaintiffs were on November 1, 1977, and had been for several years before, employed by the park district as physical instructors and thus were "monthly" personnel. Three of the plaintiffs in this count, and others similarly situated, were on November 1, 1977, and had been for several years before, physical instructors within the subclassification of "hourly" personnel.

Plaintiffs then allege that on November 10, 1977 they were notified that defendants were going to conduct a civil service examination on December 10, 1977. They took the examination, but were notified that they had failed. Then, on or about August 10, 1978, four of them, all who were "monthly" salaried physical instructors, and were entitled to full benefits as park district employees, were terminated, told to take their vacation the following day, begin their vacations and not thereafter report to work. Three of them, who were "hourly" physical instructors were also notified that they had failed the examination but were not terminated and have continued to be employed by defendants performing the job of physical instructor, but accruing no benefits, vacation or pension rights, and not being entitled to job security. Plaintiffs allege that a disproportionately higher number of the physical instructors who had failed the "civil service examination" were monthly salaried employees, entitled to benefits. "A disproportionately higher number of those so terminated were black [sic], and a disproportionately higher number of those were female." Plaintiffs allege that there-

after defendants, having retained three of them, "and others similarly situated who also 'failed the examination', ..." have hired additional hourly physical instructors, a disproportionately high number of these being members of the Caucasian race.

Plaintiffs further allege that the "civil service examination" was not "reasonably job-related, not reasonably free of cultural, racial and sexual bias, and administered under such circumstances as not to assure objectivity, impartiality, accuracy or consistency ...," or disclose that defendants were engaged "in a pattern of behavior of evincing a design and intent to (1) eliminate large numbers of black [sic] salaried physical instructors entitled to job benefits; (2) of those retained or rehired to eliminate their entitlement to job benefits and security, (3) to replace such terminated or demoted such black [sic] employees with employees disproportionately white [sic], to whom job benefits and security are provided in disproportionate numbers." Plaintiffs allege that by reason of defendants' behavior, three plaintiffs who although "hourly" employees had been retained, were wrongfully discriminated against because of their race, paid less than others for performing the same work with similar skills, denied benefits, including accrual of vacation, pension rights, sick leave and pension benefits provided to others performing the same work. Plaintiffs state that they have thus been deprived of property without due process and equal protection of the laws, all in violation of the constitution and laws of the United States, and of the State of Illinois. They allege that there is no plain, adequate or complete remedy at law to redress the wrongs alleged, and that this suit through this count for injunctive relief, reinstatement, backpay and damages is their only means of securing relief.

Plaintiffs allege that they are suffering and will continue to suffer "irreparable injury from defendants' policies, practices, customs and usages of discrimination against blacks [sic]." They pray for entry of injunction, temporary and permanent, advance of this case on the docket for a hearing at the earliest practical date, cause the case to be expedited in every way, and that upon hearing permanently enjoin defendants from continuing or maintaining the policy and practice of discriminating against plaintiffs and the class; declare the "civil service test" administered to plaintiffs by defendants as invalid and void, and enjoin defendants from denying the plaintiffs employment on the basis of the test and denying them status as salaried employees entitled to full benefits. They pray that they who have been discharged be re-employed, be awarded backpay and benefits from their period of wrongful termination to the date of the court's remedial order; that the other three who retain their position as hourly employees be accorded status as salaried physical instructors with full benefits effective retroactively to the date determined by the court; and that the court allow plaintiffs their costs and expenses together with such other and additional relief as may appear reasonable and just.

Count III is also "a claim in equity for employment discrimination"; it is also brought under the due process and equal protection clauses of the federal and Illinois constitutions, and is asserted under 42 U.S.C. § 1983. This count is by 12 of Count I's 21 plaintiffs; but they include three of those who allege in Count II that they were "monthly" salaried physical instructors of defendant Park District and two of the three who allege they were "hourly" physical instructors. These five are joined by seven other plaintiffs in making the claim in Count III. They allege that the same defendants named in Count II have deprived them of due process and equal protection of the laws by administering a system of parks in the various sections of Chicago where defendants developed and administered programs for various parks, assigned staff and personnel, provided funding, secure police protection and promulgate ordinances and resolutions controlling the operation and use of parks and park facilities. Plaintiffs allege that defendants exercising state power, "developed and maintained a policy, practice, custom

and usage of hiring, assigning and promoting park district employees on the basis of race and ethnic background in that, in part, the park district perpetuated 'white' parks and facilities in white communities, to which white employees were assigned in disproportionately high numbers [sic]."

Plaintiffs allege that defendants have developed and maintained "a policy of establishing and perpetuating 'black' and 'Latino' parks and facilities in black and Latino communities, to which blacks are assigned either exclusively or in disproportionately higher numbers. Conversely, blacks and Latinos are routinely, as a matter of policy, practice, custom and usage, denied the opportunity to transfer, be assigned to or be promoted into jobs located in white parks in white communities [sic]." They state that as a result of this policy, the assignment of administrative, recreational, support and maintenance staff varied substantially from park to park with a high correlation between greater numbers and higher quality of personnel assigned and predominance of Caucasians in the community served, and a similarly high correlation between lower numbers and lower quality of staff assigned and predominance of Blacks and persons of Latino descent in the community served. "Facilities serving minority communities have substantially fewer experienced staff and personnel of all types than do facilities serving predominantly white communities." Plaintiffs allege that as a result, one of their number, "and others similarly situated, have been forced to resign from the employ of the park district, due to their realization that their opportunities for reassignment, higher pay and promotions were severely limited by reason of defendants' limiting blacks and Latinos to employment, assignment, pay and promotions within the context of black parks." They allege that there is no plain, adequate or complete remedy at law to redress the wrongs they allege in this count; and that their suit for a permanent injunction, reinstatement of some of the plaintiffs, backpay and damages, is their only means of securing adequate relief. They state that they are suffering and will continue to suffer irreparable injury as a result of defendants' policy, practice, custom and usage of discrimination against Blacks and Latinos with respect to hiring, assignment and promotion. They pray for relief, declaratory and injunctive, reinstatement of named ones of them, and others similarly situated, award backpay and benefits for the period from the wrongful coerced resignations to the date of the court's remedial order, their costs and expenses, including reasonable attorney's fees "and such other and additional relief as may appear reasonable and just."

Count IV "is a claim in equity for injunctive relief to require the removal of dangerous conditions caused by a policy of racial discrimination, and for damages for injury sustained by plaintiffs and others similarly situated as a result of the dangerous conditions so created." It invokes this court's jurisdiction under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.*, and the Civil Rights Acts of 1871, 42 U.S.C. §§ 1983, 1985(3).

Plaintiffs are the four minors by their mothers suing "on his or her own behalf and on behalf of all black and Latino residents of Chicago who are injured by the discrimination alleged herein [sic]." Defendants are the same as in Counts II and III. It is alleged that defendants, charged by law to manage and control the property of the park district, and subject to discharge governmental functions subject to the guarantees of due process and equal protection of the laws provided in the federal and state constitutions, did maintain, in the exercise of state power, a system of parks and park facilities in which "[t]hrough the actions and inactions, willful and otherwise and both simple and gross neglect of the Defendants substantial disparities having a high correlation to the ethnic and racial characteristics of the community served have been permitted to develop and persist in the various parks, park facilities and services operated by defendants and under their control." Plaintiffs allege that these parks in which race discrimination was practiced by defendants in their administration thereof, were danger-

ous and maintained in a dangerous condition that caused them as minors to suffer injuries which "were the direct and proximate result of the racially and ethnically discriminatory policies of Defendants whereby parks and facilities operated by Defendants in black and Latino neighborhoods are deliberately poorly maintained, staffed and funded, thereby causing dangerous conditions to exist and continue in the subject parks and facilities, with the result that injuries such as those sustained by Plaintiffs are frequently sustained by blacks and Latinos who use the said parks and facilities [sic]." It is further alleged that because of the racially discriminatory policies and practices, customs and usages of defendants described in this count, plaintiffs have been subjected to unlawful and unconstitutional activities, in violation of their rights under the due process and equal protection clauses of the federal and state constitutions, and they have been deprived of rights guaranteed by the laws mandating equality in public accommodations, that is, 42 U.S.C. § 2000a *et seq.*, the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985(3). Plaintiffs pray for award of actual damages in the sum of $25,000 each of them, actual and punitive damages as indicated by proof upon trial to other members of the class as allowed by law, their costs and attorney's fees, and "such other relief as justice and equity may require."

Count V is a claim made under the Fourteenth Amendment to the Constitution of the United States, Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.*, and under 42 U.S.C. §§ 1983, 1985; Article 1, Section 2 of the Illinois Constitution; Chapter 105, Section 8–1 and Section 333.28 of Chapter 105 of the Illinois Revised Statutes. Plaintiffs are the 21 adults and the four minors in Count I. They sue "on his or her own behalf and on behalf of all other black, Latino or poor residents of Chicago [sic] who are injured by the various acts of discrimination alleged [in this count]." Defendants are also the same as those named in Count I; that is, the Chicago Park District, its general superintendent, park district commissioners in office at the time this suit was filed, and four former commissioners. Plaintiffs allege that the park district, its commissioners and officers, are required by state law, and by state and federal constitutions to manage and control park property and discharge the governmental functions of the district subject to the guarantees of due process and equal protection of the laws. Plaintiffs then reallege the allegations in all of the substantive paragraphs in Counts I through IV. They allege that the acts and omissions alleged in those counts are, "among other things, violations of the United States and Illinois Constitutions, violations of the various cited laws of the United States and Illinois, tortious acts caused by combinations of willful, gross and simple negligence and tortious acts sounding in fraud and deceit." Plaintiffs say that the defendant Park District is liable to them "and others similarly situated for the subject acts and omissions, and the individual Defendants are jointly and severally personally liable for them."

Then, quoting a portion of Chapter 105, Section 333.28 of the Illinois Revised Statutes, plaintiffs allege that the quoted portion of the statute provides for the removal from office of any commissioner or officer of the Chicago Park District who violates the statute and shall, in addition to a fine of $10,000, "forfeit the right to his office, trust or employment and shall be removed therefrom." Plaintiffs allege that the named defendants have violated Section 333.28 of Ill.Rev.Stat. ch. 105, pray that this court declare them and the park attorney in violation of the statute, declare their rights to their respective offices and employment forfeited, removed them therefrom and impose on the four former park commissioners the fine provided by the act. Plaintiffs pray for a temporary and permanent injunction against the current and serving park commissioners so as to prevent them from violating further the state statute on which plaintiffs rely. They ask that they be awarded their costs and attorney's fees, and be granted "such other relief as may be meet."

Defendants have answered plaintiffs' second amended complaint; they deny all of its material allegations, including plaintiffs' charges that they have maintained and operated the Chicago park district system under a policy, practice, custom, and usage of race and ethnic discrimination. They allege affirmative defenses which put in issue plaintiffs' right to recover in this case.

## II

It can be seen from this description of the two cases that the parties are essentially the same, the subject matter involved, that is the park system, is the same, and the claims of the plaintiffs are, in the main, the same. Through both cases there runs a common issue; that is, whether defendants, in the exercise of state power, are administering a system of municipal parks in a racially discriminatory manner. It is true that in *Alexander v. Chicago Park District,* 548 F.Supp. (Ill.1982), a number of the plaintiffs allege that they have been racially discriminated against with regard to employment opportunities within the Chicago park district system. This difference is only in the kind of claim and the extent to which those plaintiffs must go in order to prove their case. In sum, then, these two civil rights class actions involve common questions of law or fact.

## III

Rule 42(a), Fed.R.Civ.P., provides, in pertinent part, that:

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning the proceedings therein as may tend to avoid unnecessary costs or delay.

In applying this rule, courts which have discussed the issue of consolidation have stressed that the purpose of joining actions is to promote convenience and judicial economy. *Johnson v. Manhattan Railway Co.,* 289 U.S. 479, 496–497, 53 S.Ct. 721, 727–28, 77 L.Ed. 1331 (1973); *Katz v. Realty Equities of New York,* 521 F.2d 1354, 1358 (2d Cir.1975); *May v. United States,* 515 F.Supp. 600, 603 (S.D.Ohio 1981). Consolidation of cases like the ones before the court will promote the aims of all the parties, economize time and effort without circumscribing the opportunity for full litigation of all relevant claims. The decision whether to sever, or to consolidate whole actions or sub-units for trial, is necessarily committed to this court's discretion. *Arnold v. Eastern Airlines, Inc.,* 681 F.2d 186, 192 (4th Cir.1982).

Rule 42 is designed to encourage consolidation where common questions of law or fact are present, 9 Wright & Miller's Federal Practice and Procedure, § 2383 at 260–261 (1971), *United States v. Knauer,* 149 F.2d 519, 520 (7th Cir.1945), *aff'd,* 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500 (1946); but this should not be done where it will cause prejudice to a party. *Bradley v. Soo Line R. Co.,* 88 F.R.D. 307, 309 (E.D.Wisc. 1980). Further, this court must remember that consolidation does not merge the two suits into a single cause or change the rights of the parties, or make those who are parties in one suit parties in another. *See McKenzie v. United States,* 678 F.2d 571, 574 (5th Cir.1982); *cf. Commodities Futures Trading Commission v. Board of Trade of City of Chicago,* 657 F.2d 124 (7th Cir.1981).

With these protective principles in mind, despite the objection of one party, *Compania Espanola de Pet., S.A. v. Nereus Ship.,* 527 F.2d 966, 974 (2d Cir.1975), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976), or despite opposition of all the parties, this court can order consolidation of the cases. *In re Air Crash Disaster at Florida Everglades,* 549 F.2d 1006, 1013 (5th Cir.1977). If two cases appear to this court to be of like nature and relative to the same question, if a joint trial of them would avoid unnecessary costs and delay, and it is reasonable to try them together, it is within this court's discretionary power to order consolidation. *Mutual Life Insurance Co. v. Hillmon,* 145 U.S. 285, 292, 12 S.Ct.

**500**

909, 911, 36 L.Ed. 706 (1892); *see Hooker Chemicals and Plastics v. Diamond Shamrock,* 96 F.R.D. 46, 49 (W.D.N.Y.1982). The fact that one or all of the parties object, or that the issue of consolidation is raised by the court *sua sponte,* is not dispositive. These cases before the court meet all of the tests; therefore, an order of consolidation will be entered.

In addition, based either on agreement of the parties or by decision after appropriate hearings pre-trial, the court will make "such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay," Rule 42(a), Fed.R.Civ.P., and which will assure a fair and impartial trial to all the litigants. *Cf. Beauchamp v. Russell,* 547 F.Supp. 1191, 1199 (D.C.Ga.1982).

So ordered.