**UNITED STATES OF AMERICA and GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiffs,**

**v.**

**WEST INDIES TRANSPORT CO., INC., WIT EQUIPMENT CO., INC., and W. JAMES OELSNER, Defendants.**

**WITWATER CORPORATION, Petitioner,**

**v.**

**MICHAEL E. MURPHY, in his capacity as Area Port Director for the United States Customs Service, Respondent.**

Crim Action No. 93-195

Civil Action No. 98-104

District Court of the Virgin Islands

Division of St. Croix

December 16, 1998

JAMES A. HURD, JR., ESQ., United States Attorney, CURTIS V. GOMEZ, ESQ., Assistant U.S. Attorney, Charlotte Amalie, St. Thomas, VI. *Attorney for United States of America, Plaintiff.*

TRESTON E. MOORE, ESQ., MOORE & DODSON, St. Thomas, VI. *Attorney for Defendant, W. James Oelsner.*

ANDREW C. SIMPSON, ESQ., BRYANT WHITE & BARNES, P.C., Christiansted, St. Croix, VI, *For Witwater Corporation, Petitioner.*

CURTIS GOMEZ, ESQ., Assistant U.S. Attorney, JAMES S. CARROLL, ESQ., Assistant U.S. Attorney, Charlotte Amalie, St. Thomas, VI, *Attorney for Michael E. Murphy, Respondent.*

BROTMAN, *District judge*

Presently before the Court are the following motions: (1) a motion filed by W. James Oelsner ("Oelsner") on behalf of all of the defendants to Criminal Action No. 93-195 to quash the writ of execution filed by the United States in that action and to be granted a hearing on this matter; (2) a motion filed by Witwater Corporation ("Witwater") to intervene and to stay or quash the writ of execution filed by the United States in Criminal Action No. 93-195; and (3) a motion to dismiss filed by the United States in Civil Action No. 98-104.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 26, 1996, this Court entered a judgment against Oelsner ("Oelsner Judgment")[1] which imposed a prison sentence

---

[1] The jury found Oelsner guilty of the following offenses: (1) violation of the Clean Water Act, 33 U.S.C. § 1311(a), 33 U.S.C. § 1319(c)(2)(A), 18 U.S.C. § 2; (2) violation of the Rivers and Harbor Act, 33 U.S.C. § 403, 33 U.S.C. § 406; (3) violation of the Ocean Dumping Act, 33 U.S.C. § 1411(a)(1), 33 U.S.C. § 1415(b)(1), 18 U.S.C. § 2; (4) conspiracy to defraud the United States, 26 U.S.C. § 86(a)(3)(1)(A); and (5) fraud, misuse of visas, 18 U.S.C. § 2, 18 U.S.C. § 1546. *See* United States' Opposition, Attach. 2.

and required Oelsner to pay $1,440,450.00 in restitution[2] and $95,500 in fines. See Opposition of the United States to the Emergency Motion of Witwater Corporation to Intervene and to Stay or Quash Execution ("United States' Opposition"), Attach. 2. Also on March 26, 1996, this Court issued criminal judgments against West Indies Transport, Inc. ("West Indies") and WIT Equipment Co., Inc. ("WIT Equipment") in the same matter.[3] All three judgments contained identical lists of vessels and real estate associated with the defendants that the Court determined were subject to liens. *See id.* Included in the list was the vessel Wittug. *See id.*

On April 16, 1996, the United States recorded a lien against the Wittug at the Recorder of Deeds, Division of St. Croix to satisfy the $1,440,450.00 judgment previously entered against Oelsner. *See id.,* Attach. 3. On November 9, 1998, the United States applied for a writ of execution on the Oelsner Judgment against the Wittug, serving Oelsner with a copy of the application by mail on November 10, 1998. Also on November 9, 1998, Witwater Corporation ("Witwater") filed an emergency motion to intervene and to stay or quash execution of the writ. On November 12, 1998, this Court issued the writ. On November 23, 1998, Oelsner filed a motion to quash the writ of execution and to obtain a hearing on the matter.[4]

---

[2] With regard to the amount of restitution Oelsner was required to pay, the judgment stated as follows:

The defendant shall pay restitution within Sixty (60) days from today's date provided, however, that if the costs of these cleanup efforts are less than the amount to which the Court made reference of $1,440,450.00, credit will be given to the defendants to that extent.
Any restitution payments made by defendants West Indies Transport, Inc. and/or WIT Equipment Co., Inc. shall be applied to reduce this amount accordingly.

United States' Opposition, Attach. 2.

[3] The Court ordered West Indies to pay $3,520,500.00 in fines and $1,440,450.00 in restitution. The Court ordered WIT Equipment to pay $1,520,500.00 in fines and $1,440,450.00 in restitution. In both the West Indies and the WIT Equipment judgments, the Court stated that any restitution payments made either by the company not subject to the judgment or by Oelsner would be applied to reduce the amount of restitution owed by the company subject to the judgment.

[4] Oelsner alone brings the motion to quash and to obtain a hearing, stating that the other corporate defendants are defunct. *See* Defendants' Motion at 1, n.1.

In addition to attempting to intervene in the United States' case against Oelsner, Witwater has filed its own action regarding the Wittug. On May 22, 1998, Witwater filed a petition for order of mandamus, alleging that it owns the Wittug and that the United States Customs Service has wrongfully denied the Wittug clearance to depart St. Thomas, USVI where it is currently docked. *See* Petition for Order of Mandamus, ¶¶ 6, 7, 9, 17. On August 7, 1998, the United States filed a motion to dismiss the petition, arguing that the Court lacked jurisdiction to issue an order of mandamus in such an action and that Witwater failed to exhaust its administrative remedies before filing the petition. On November 10, 1998, the Court heard argument on this motion ("hearing") and ordered that the hearing transcript be made part of the criminal action pending against Oelsner as well as part of the mandamus action Witwater initiated.

## II. DISCUSSION

### A. DEFENDANTS' MOTION TO QUASH AND DEMAND FOR HEARING IN CRIMINAL ACTION NO. 93-195

The writ of execution in this matter was applied for and issued pursuant to the Federal Debt Collection Procedures Act of 1990, 28 U.S.C.A. § 3001 et seq. ("Act") which provides "the exclusive civil procedures for the United States . . . to recover a judgment on a debt." *See* United States' Opposition, Attach. 4, 5; 28 U.S.C.A. § 3001(a)(1) (West 1994). The Act permits the enforcement of a judgment by writ of execution but requires that the judgment debtor be notified of the writ and given 20 days to request a hearing. *See* 28 U.S.C.A. § 3202(a), (b) (West 1994). When requesting a hearing, the judgment debtor may also request that the Court quash the writ. *See* 28 U.S.C.A. § 3202(d) (West 1994). The issues that may be addressed at the hearing are limited by the Act and include "the probable validity of any claim of exemption by the judgment debtor" and "compliance with any statutory requirement for the issuance of the postjudgment remedy." 28 U.S.C.A. § 3202(d) (West 1994).

Oelsner filed his request for a hearing and to quash the writ within 20 days after receiving notification of the writ of execution. Oelsner makes several arguments in support of his request. First,

Oelsner argues that neither he nor the other defendants to Criminal Action No. 93-195 owns the Wittug upon which the United States has executed judgment. *See* Defendants' Motion, ¶ 2. According to both Oelsner and Witwater, the actual owner of the vessel is Witwater. *See id.*, ¶ 3; Witwater's Emergency Motion to Intervene and to Stay or Quash Execution ("Witwater's Emergency Motion") at 2; Witwater's Reply at 1. The Act permits the United States to execute on "[a]ll property in which the judgment debtor has a substantial nonexempt interest." 28 U.S.C.A. § 3203(a) (West 1994). The Act defines "property" as "any present or future interest, whether legal or equitable, in real, personal . . ., or mixed property, tangible or intangible, vested or contingent, wherever located and however held . . . ." 28 U.S.C.A. § 3002(12) (West 1994). The United States claims that Oelsner has an equitable interest in the Wittug based on statements contained in a Price Waterhouse report that was made a part of Oelsner's sentencing hearing. *See* United States' Opposition at 4. Oelsner claims that neither he nor his co-defendants is the equitable owner of the Wittug and disputes the present validity of the Price Waterhouse report. *See* Defendants' Motion, ¶ 4.[5] Whether Oelsner is the equitable owner of the Wittug is a question which must be resolved at a hearing on the writ.

In his motion, Oelsner also requests that the hearing provide a forum for determining the amount of restitution which is due and owing. Oelsner contends that the restitution amount in the judgment was to have been reduced to reflect his own remediation efforts. *See id.*, ¶ 5. The Oelsner Judgment indicates that "if the costs of [the United States'] cleanup efforts are less than the [restitution] amount to which the Court made reference of $1,440,450.00, credit will be given to the defendants to that extent." United States' Opposition, Attach. 2. The Act prohibits the use of a writ to execute judgment on property that exceeds in value the aggregate amount of the judgment. *See* 28 U.S.C.A.

---

[5] Black's Law Dictionary defines an equitable owner as "one who is recognized in equity as owner of the property, because real and beneficial use and title belong to him, even though bare legal title is invested in another." Deluxe Black's Law Dictionary 539 (6th ed. 1990).

§ 3203(c)(2)(B)(i) (West 1994). The cost of the remediation that remains to be done as well as the value of the Wittug are issues which must be resolved at a hearing on the writ.

In his motion, Oelsner also challenges the validity of the March 26, 1996 judgment itself, arguing the judgment violated Fed. R. Crim. P. 7(c)(2). *See* Defendants' Motion, ¶ 1. This rule prohibits a judgment of forfeiture in a criminal proceeding unless the indictment or information states the extent of the interest or property that is subject to forfeiture. *See* Fed. R. Crim. P. 7(c)(2). Pursuant to 28 U.S.C.A. § 3202 (West 1994), a challenge to the validity of a judgment exceeds the scope of a hearing on a writ. Therefore, the Court cannot entertain argument regarding this challenge when it considers Oelsner's other challenges to the writ of execution.[6]

## B. WITWATER'S MOTION TO INTERVENE IN CRIMINAL ACTION NO. 93-195 AND TO STAY OR QUASH THE WRIT OF EXECUTION

Even before this Court issued the writ of execution, Witwater had filed a motion requesting that it be permitted to intervene in the United States' action against Oelsner with regard to the then-anticipated writ. *See* Witwater's Emergency Motion at 1. In its motion, Witwater alleges that it is the legal owner of the Wittug and that the writ therefore violates its due process rights. *See id.*; Witwater's Reply at 1. At the November 10, 1998 hearing, the United States indicated that it had no objection to Witwater's intervention for the limited purpose of objecting to the writ of execution. *See* Hearing Transcript at 12-13. In the defendants' motion, Oelsner indicates the same. *See* Defendants' Motion at 2. The Court will therefore grant Witwater's motion to intervene for

---

[6] Even if the Act permitted challenges to a judgment's validity to be made at a writ hearing, the Court would not entertain Oelsner's forfeiture argument because it is completely devoid of merit. Forfeiture is a term of art used to refer to a criminal defendant's divestiture of property as a penalty for violating certain statutes. *See* Deluxe Black's Law Dictionary 650 (6th ed. 1990). Criminal defendants who receive this penalty must forfeit the property used in the commission of the crime as well as property acquired from the proceeds of the crime. *See id.* Forfeiture may not be imposed unless a statute specifically provides for it. *See United States v. Charles D. Kaier Co.*, 61 F.2d 160, 162 (3d Cir. 1932). The statutory provisions under which Oelsner was convicted did not contain forfeiture penalties, nor was the Court's imposition of a fine and restitution in the nature of a forfeiture.

the limited purpose of challenging the writ of execution issued in Criminal Action No. 93-195.

In its motion to intervene, Witwater also requests that the Court stay or quash the writ of execution it issued on November 12, arguing that procedural defects preclude execution pursuant to the writ. First, Witwater argues that a criminal restitution judgment may not be executed upon without the Court first conducting a separate civil action to determine the amount of restitution that is due and owing. *See* Witwater's Emergency Motion at 2-3. Second, Witwater argues that the United States may not collect restitution from Oelsner because the restitution order fails to identify the United States as the restitution payee. *See id.* at 3. Finally, Witwater argues that the United States failed to perfect its lien against the Wittug. *See id.* at 3-4. The Court finds that these arguments are without merit and will not permit them to be raised at the hearing on the writ in which Witwater has been given permission to participate.

■ The Act provides a means for the United States to enforce either civil or criminal judgments pursuant to which it is owed a debt. *See* 28 U.S.C.A. § 3002(8) (West 1994). The Act permits both civil and criminal judgments to be enforced by any of the remedies described therein, including the issuance of a writ of execution. *See* 28 U.S.C.A. § 3202(a) (West 1994). Contrary to Witwater's position, the Act does not contain any language indicating that a writ may not be issued to enforce a criminal judgment until a civil judgment has been entered in the same case. In fact, at the time Oelsner was sentenced, the United States Code explicitly permitted criminal restitution orders to be enforced in the same manner as criminal fines. *See* 18 U.S.C.A. § 3663(h) (West Supp. 1996). The imposition of a fine created a lien in favor of the United States upon all property belonging to the person fined. *See* 18 U.S.C.A. § 3613(a) (West Supp. 1996). The lien arose at the time the judgment was entered. *See id.* A fine, as well as an order of restitution, could "be enforced by execution against the property of the person fined in like manner as judgments in civil cases." 18 U.S.C.A. § 3613(e)

(West Supp. 1996).[7] The Court therefore concludes that Witwater is mistaken in its assertion that a civil judgment must follow a criminal judgment in order for a writ of execution to issue pursuant to the Act.

■ While Witwater accurately points out that the Court's March 26, 1996 restitution order omits the payee's name, it incorrectly asserts that this omission prevents the United States' from executing on the judgment. Both the sentencing hearing transcript and subsequent correspondence indicate that the Court intended the payee to be the United States because the United States Coast Guard would be responsible for cleaning up the contaminated site. *See* United States' Opposition, Attach. 8 at 82-83 ("The Court finds that the cost of removal as originally submitted to the Court by the Coast Guard was $2,543,684.51."); *id.*, Attach. 9 (May 26, 1998 letter from the Coast Guard to Richard Brown & Associates, Marine Surveyor, regarding approval of plan for salvage of the Marlago, one of the vessels listed in the Court's March 26, 1996 judgment against Oelsner as subject to lien). Fed. R. Crim. P. 36 permits the Court to correct omissions like the one presently before the Court.[8] Pursuant to this rule, the Court will amend the March 26, 1996 judgments against Oelsner, West Indies, and WIT Equipment to include the United States as the restitution payee. The Court will not quash the writ of execution based on its failure to include the name of the payee in its original restitution order.

Nor will the Court quash the writ based on Witwater's argument that the United States' lien against the Wittug was never perfected. Pursuant to 18 U.S.C.A. §§ 3663(h) and 3613(a), the entry of judgment against Oelsner created a lien on the Wittug. The United States perfected this lien by recording a notice of the lien on April 16, 1996 at the Recorder of Deeds, Division of St. Croix. *See* United States' Opposition, Attach. 3.

---

[7] Both 18 U.S.C.A. § 3663(h) and 18 U.S.C.A. § 3613(a), (e) were amended by Pub. L. 104-132 which became effective in cases in which the defendant was convicted on or after April 24, 1996. Because the Court entered Oelsner's conviction on March 26, 1996, Oelsner was not affected by these amendments.

[8] Fed. R. Civ. P. 36 states that "clerical mistakes made in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders."

## C. UNITED STATES' MOTION TO DISMISS WITWATER'S PETITION FOR ORDER OF MANDAMUS IN CIVIL ACTION NO. 98-104

Even before Witwater attempted to intervene in Criminal Action No. 93-195, it filed a petition for order of mandamus, claiming that it owned the Wittug and that the United States Customs Service wrongfully denied the Wittug clearance to depart St. Thomas, USVI where it was—and still is—docked. The United States has moved to dismiss Witwater's petition, making two arguments in support of its motion. First, the United States argues that this Court lacks jurisdiction to issue an order of mandamus in Witwater's action.[9] The United States contends that a district court may only issue an order of mandamus to compel a federal officer or employee to perform a mandatory, rather than a discretionary, duty. *See* Memorandum in Support of Motion to Dismiss ("United States' Dismissal Brief") at 3. According to the United States, the decision of the Port Director for the United States Customs Service to grant or deny clearance to depart a port is discretionary, not mandatory. *See id.* For this reason, the United States argues that this Court lacks jurisdiction to issue an order of mandamus compelling the Port Director to grant the Wittug clearance to leave St. Thomas. *See id.*

28 U.S.C.A. § 1361 (West 1993) states that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." The Third Circuit has determined that this provision confers jurisdiction "where a clear duty is owed the plaintiff or there is an abuse of discretion." *Grant v. Hogan*, 505 F.2d 1220, 1225 (3d Cir. 1974).

The law regarding the clearance of vessels bound for foreign ports is laid out at 46 U.S.C.A. App. § 91, in the federal regulations promulgated in accordance with this section, 19 C.F.R. § 4.0 et seq, and in numerous other U.S.C.A. provisions. *See, e.g.,* 8 U.S.C.A. § 1221 (West Supp. 1998) (lists of alien and citizen passengers

---

[9] Pursuant to Fed. R. Civ. P. 12(h)(3), a court must dismiss an action "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter."

arriving and departing); 8 U.S.C.A. § 1253 (West Supp. 1998) (failure of aliens to depart); 16 U.S.C.A. § 1376 (West 1985) (unlawful taking of a marine mammal); 46 U.S.C.A. § 2110 (West Supp. 1998) (failure to pay customs fee); 46 U.S.C.A. § 100 (West 1958) (failure to pay legal fee). Pursuant to 46 U.S.C.A. app. § 91 (West Supp. 1998), any United States or foreign vessel "shall obtain clearance from the Customs Service before proceeding from a port or place in the United States." 19 C.F.R. § 4.61(a) (1998) describes the procedure for obtaining clearance from the Customs Service. 19 C.F.R. § 4.61(b) (1998) lists a number of requirements with regard to which a port director must verify compliance before granting clearance. As the other U.S.C.A. provisions regarding vessel clearance make clear, this list is not exhaustive.

Contrary to the United States' position, a port director's duty to grant clearances is mandatory, not discretionary. *See* 34 Op. Att'y Gen. 244 (1923).[10] A port director must comply with the statutes governing vessel clearance, granting clearances unless some statutory authority justifies his refusal to do so. *See id.*[11] Whether Murphy complied with his mandatory duty to grant clearances when he denied clearance to the Wittug is the question presented by Witwater's petition. It is a question that is within the jurisdiction of the Court to answer, pursuant to 28 U.S.C.A. § 1361.

The second argument the United States makes in support of its motion to dismiss Witwater's petition is that Witwater has failed to exhaust its administrative remedies. The Supreme Court has determined that mandamus relief is only available if "all other avenues of relief" have been exhausted. *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S. Ct. 2013, 2022, 80 L. Ed. 2d 622 (1984). The United States argues that Witwater should have protested the port director's decision to deny clearance to the United States Court of

---

[10] The Attorney General predicated this holding on the 1923 language of 46 U.S.C.A. App. § 91, specifically the statement that the collector "shall grant a clearance for the vessel and cargo." *See* 34 Op. Att'y Gen. 244 (1923). While this language is no longer part of the statute, the federal regulations promulgated pursuant to the current statute contain similar language, describing the procedure for obtaining clearance and stating that "[c]learance shall be granted." 19 C.F.R. § 4.61(a).

[11] The Attorney General opinion cited for this proposition also states that a customs official may deny a clearance if the papers presented to him are not regular and legal on their face or if the vessel is burdened with a lien in favor of the United States. *See* 34 Op. Att'y Gen. 244 (1923).

International Trade in accordance with 19 U.S.C.A. § 1514(a) (West Supp. 1998). *See* United States' Dismissal Brief at 5.

As Witwater accurately asserts, however, 19 U.S.C.A. § 1514(a) does not apply to a port director's decision to deny clearance. *See Puget Sound Freight Lines v. U.S.*, 36 C.C.P.A. 70, 77-78, 173 F.2d 578, 583 (1949) (holding that the jurisdiction conferred upon the Customs Court, currently known as the Court of International Trade, and the Court of Customs and Patent Appeals, currently the Federal Circuit, by 19 U.S.C.A. § 1514(a) "is limited to fees and charges connected with the classification of merchandise and the rate of duty imposed thereon"). This Court is not aware of any administrative remedies which Witwater is required to pursue before petitioning for a writ of mandamus.

■ The Court find that it has jurisdiction over Witwater's petition pursuant to 28 U.S.C.A. § 1361 because the port director owes Witwater a nondiscretionary duty to grant the Wittug clearance and because Witwater was not required to exhaust any other avenues of relief before filing the current petition. The Court will therefore deny the United States' motion to dismiss.

## D. CONSOLIDATION OF CRIMINAL ACTION NO. 93-195 AND CIVIL ACTION NO. 98-104

Fed. R. Civ. P. 42(a) gives the Court discretion to order a joint hearing where two separate actions involving common questions of law or fact are pending before the Court.[12] The purpose of this rule is to avoid unnecessary cost and delay. *See Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285, 292, 12 S. Ct. 909, 911, 36 L. Ed. 706 (1892); *Midwest Community Council, Inc. v. Chicago Park Dist.*, 98 F.R.D. 491, 499 (N.D. Ill. 1983). The Court may order a joint hearing at the request of a party or upon its own initiative. *See Ellerman Lines, Ltd., v. Atlantic & Gulf Stevedores, Inc.*, 339 F.2d 673 (3d Cir. 1964). The joint hearing does not have the effect of merging the two cases

---

[12] Fed. R. Civ. P. 42(a) states as follows:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning the proceedings therein as may tend to avoid unnecessary costs or delay.

314

into a single case or changing the rights of the parties, "for the suits retain their separate identities and each requires the entry of a separate judgment." *Miller v. U.S. Postal Service*, 729 F.2d 1033, 1036 (5th Cir. 1984); *see also McKenzie v. U.S.*, 678 F.2d 571, 574 (5th Cir. 1982); *Midwest Community*, 98 F.R.D. at 499.

■ Because one of the issues which must be resolved in both Criminal Action No. 93-195 and Civil Action No. 98-104 is the identity of the Wittug's owner, the hearing on the writ will serve as a joint hearing on both matters for the purpose of determining the owner of the Wittug. Witwater, Oelsner, and the United States will participate in this hearing, ensuring the presence of all parties having an interest in these actions. The joint hearing will avoid the unnecessary cost and delay of duplicative proceedings on the issue of ownership.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Oelsner's request for a hearing on the writ of execution in Criminal Action No. 93-195, grant Witwater's motion to intervene in the hearing for the limited purpose of challenging the writ, deny the United States' motion to dismiss the petition for order of mandamus filed by Witwater in Civil Action No. 98-104, and consolidate Criminal Action No. 93-195 and Civil Action No. 98-104 to the extent that the hearing on the writ will become a joint hearing on the question of ownership of the Wittug. The Court will enter an appropriate order.

Dated: December 16, 1998