Angelina **O'BRIEN**, Individually and as Administratrix of the Estate of Richard O'Brien, Plaintiff–Appellee–Cross–Appellant,

v.

**NATIONAL GYPSUM CO.**, AC & S, Inc.; Armstrong World Industries, Inc.; The Celotex Company; Eagle–Picher Industries, Inc.; GAF Corporation; Nicolet, Inc.; Raymark Industries Inc.; Owens–Corning Fiberglass Corp.; U.S. Mineral

**70**

Products Company; H.K. Porter Company, Inc.; The Flintkote Company; Carey Canada, Inc.; Fibreboard Corporation; Rock Wool Manufacturing Co., Inc.; Owens–Illinois, Inc.; Turner & Newall, PLC.; United States Gypsum Company; Dana Corporation; Certainteed Corporation; TAF International, Ltd.; Pittsburgh–Corning Corporation, Defendants,

The Celotex Corporation, Defendant–Appellant–Cross–Appellee.

Nos. 291, 486, Dockets 89–9111, 89–9117.

United States Court of Appeals, Second Circuit.

Argued March 28, 1991.

Decided Sept. 4, 1991.

Andrew T. Berry, Newark, N.J. (McCarter & English, of counsel), for defendant-appellant-cross-appellee.

Diane Paolkelli, New York City (Steven J. Phillips, Alani Golanski, Levy, Phillips & Konigsberg, of counsel), for plaintiff-appellee-cross-appellant.

Before OAKES, Chief Judge, and LUMBARD and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Following a jury trial before Judge Sifton, Celotex Corporation ("Celotex"), the successor entity to Philip Carey Manufacturing Company ("Philip Carey"), a corporation that manufactured asbestos-containing insulation materials, was found liable for the wrongful death of Richard O'Brien. Celotex appeals on two grounds: (i) that the evidence of O'Brien's exposure to Philip Carey products was insufficient to support the jury's verdict; and (ii) that the district court erred in admitting under Fed.R.Evid. 804(b)(5) hearsay statements from O'Brien's wife and a co-worker at the Navy Yard. The record supports the jury's verdict. The admission of hearsay was, if error, harmless. We therefore affirm on the appeal.

Appellee cross-appeals on the issue of damages. Celotex entered bankruptcy after the notices of appeal and cross-appeal were filed. An adjournment ⸱ ᶠ ᵗʰᵉ initial oral argument was granted because of the automatic stay. The bankruptcy court has allowed the appeal to go forward. The cross-appeal thus remains stayed.

## BACKGROUND

In 1971, Richard O'Brien, age 44, was diagnosed as suffering from mesothelioma, a rare and incurable variant of lung cancer. In 1973, after surgery, chemotherapy and radiation treatment, O'Brien succumbed to

the disease, which by then had metastasized to his spinal cord.

After New York State passed the Toxic Tort Reform Act, 1986 N.Y.Laws, ch. 682, § 4 (codified at N.Y.Civ.Prac.L. & R. § 214–c (McKinney 1990)), a one-year revival statute for certain toxic torts, Angelina O'Brien, individually and as administratrix of her late husband's estate, filed the present wrongful death action. It named as defendants a host of entities that manufactured asbestos-containing products used at the Brooklyn Navy Yard during the mid–1940s. With the exception of Celotex and Raymark Industries ("Raymark"), each of these defendants reached a settlement with O'Brien. Celotex and Raymark went to trial.

At trial, plaintiff relied for the most part upon circumstantial evidence. She produced Navy Department employment records showing that her late husband worked at the Brooklyn Navy Yard from May 1944 through May 1945 as an apprentice electrician. She offered the testimony of several of her husband's co-workers, each of whom described the working conditions at the Navy Yard and the widespread use of asbestos-containing products. This testimony established that: (i) electricians and their apprentices typically worked on ships alongside pipe-fitters, sheet metal workers, insulators, boilermakers and other such workers, many of whom were cutting and/or installing asbestos-containing products; (ii) ventilation aboard these ships was inadequate; (iii) asbestos dust frequently covered the outdoor and indoor worksites as well as the clothing of Navy Yard workers; and (iv) apart from dusty air, electricians had direct contact with asbestos "rag" because such cloth was used to line electric piping.

In addition, Harry Brayne, a supply and acquisition officer at the Navy Yard, testified to the presence of asbestos-containing products along with their dust on virtually all Navy Yard vessels during the relevant period. As to specific product evidence, six witnesses placed Philip Carey products at the Navy Yard during the relevant period, although use of Philip Carey on a particular ship at a particular time could not be shown because asbestos-containing products were often used interchangeably.

Finally, with respect to causation, Dr. Steven Markowitz, an expert in employment-related illnesses, testified that exposure to the fibers contained in asbestos dust is presently the only known cause of mesothelioma, a rare cancer.

Plaintiff offered little specific evidence of her husband's precise activities at the Navy Yard. Although plaintiff tried to establish that O'Brien worked on the aircraft carrier *U.S.S. Franklin Delano Roosevelt*—a ship that one witness described as having asbestos dust "everywhere" and "on everything," including the compartments in which electricians were working—the only evidence to support this claim consisted of two hearsay declarations admitted over objection pursuant to Fed. R.Evid. 804(b)(5).

The first of these hearsay declarations, related by plaintiff herself, placed the decedent in poorly ventilated areas aboard ships:

Q ... [B]ack when you first were dating and first knew Richard O'Brien, before you were married, did he ever speak with you at all concerning his employment in the Brooklyn Navy Yard?

A Well, he did tell me that he had worked in the holds of ships when he was in the Navy Yard. Other than that I can't remember any basic names of ships or anything, but he used to say when he was in the Navy [following his apprenticeship] he would brag that he had worked on these ships.

The second hearsay declaration, related by a boyhood and Navy friend of the decedent's, Alfred Hitchcock, placed the decedent on the *Roosevelt*. Hitchcock testified that O'Brien had once remarked that he worked on ships and, in particular on the *Roosevelt*, during his apprenticeship at the Navy Yard. Hitchcock conceded on cross-examination, however, that he had no first-hand knowledge of O'Brien's activities at the Navy Yard. Hitchcock had reconstructed O'Brien's remark largely from a recollection that O'Brien, who entered the

Navy following his one-year stint as an apprentice electrician, had been assigned to a ship on which he previously had done electrical work, probably the *Roosevelt.*

Based on this evidence, the jury returned a verdict awarding plaintiff $667,000 in compensatory damages for wrongful death. Celotex's share of liability was set at 14.28%, the same share assigned to Raymark and each of the settling defendants except for Owens–Illinois, Inc., which was assigned 0% liability. By the close of trial, Raymark had filed for bankruptcy, and all proceedings against it had been stayed. Pursuant to Fed.R.Civ.P. 54(b), therefore, the district court entered judgment solely against Celotex and ordered the company to pay $213,861, together with costs, when taxed, and interest at the statutory rate from the date of judgment.

### DISCUSSION

On appeal, Celotex challenges the sufficiency of the evidence in support of liability and the admission of the two hearsay statements.

1. *The Sufficiency of the Evidence of Causation*

■ Celotex's sufficiency challenge turns on the entirely spurious claim that a product liability plaintiff cannot prevail without direct evidence of exposure to the defendant's product. However, it is beyond any doubt that circumstantial evidence alone may suffice to prove adjudicative facts. *See Prunier v. City of Watertown,* 936 F.2d 677 (2d Cir.1991) (a rational juror could find that the absence of sufficient warning about stairs caused cyclist's accident, even without direct evidence that that was indeed the cause). Asbestos cases are no exception to that proposition. *See Johnson v. Celotex Corp.,* 899 F.2d 1281 (2d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990).

In *Johnson,* the plaintiff testified that he worked on three warships at the Navy Yard under dusty conditions. However, he could not identify the manufacturers of the specific asbestos products to which he had been exposed and thus relied on the testimony of co-workers to establish the use of a wide variety of such products on the three different ships over a four-year period. Upholding the jury's verdict against a sufficiency challenge, we stressed that this co-worker testimony included a recollection that the Navy Yard's work crews were interdisciplinary and that over a several year period an employee would work with " 'almost every different crew that the Navy Yard had to offer[,] which was electricians, machinists, shipfitters, pipefitters and asbestos installers.' " 899 F.2d at 1286. Consequently, although the plaintiff in *Johnson* offered no direct evidence of exposure to specific products, he did offer sufficient circumstantial evidence of the use of particular products on ships to which he had been assigned.

■ Celotex seeks to distinguish *Johnson* on the ground that the plaintiff in *Johnson* was able to place himself aboard specific ships amid unidentified asbestos dust. In the present case, O'Brien cannot be placed on a particular ship without relying on the challenged hearsay. Celotex stresses that the Navy Yard covered an expanse of several miles and that not all of the workers or apprentices at the yard worked on specific ships or were exposed to asbestos-containing products. Celotex thus concludes that the lack of admissible evidence placing Richard O'Brien on a specific ship or in an asbestos-contaminated environment should be deemed a failure to establish substantial contact with asbestos and thus a fatal defect in plaintiff's proof of causation.

What Celotex's argument overlooks is that viewing the testimony below in the light most favorable to the plaintiff, *Michelman v. Clark–Schwebel Fiber Glass Corp.,* 534 F.2d 1036, 1042 (2d Cir.), *cert. denied,* 429 U.S. 885, 97 S.Ct. 236, 50 L.Ed.2d 166 (1976), plaintiff established that O'Brien contracted an exceedingly rare disease, mesothelioma,. whose only known cause is exposure to asbestos. O'Brien's only known exposure to asbestos was during his tenure as an apprentice at the Brooklyn Navy Yard. These facts create a very high probability that O'Brien's

illness was caused by exposure to asbestos-containing products at the Brooklyn Navy Yard. Given testimony that asbestos products were used interchangeably on virtually all of the warships under construction in the Navy Yard, O'Brien's disease might reasonably be attributed in part to exposure to Philip Carey products.

Based on this record, therefore, we hold that, even without the two hearsay statements, there was ample basis for the jury's verdict and that the judgment of joint liability against Celotex should not be set aside.

### 2. *The Admissibility of the Hearsay Statements*

We need not consider whether the challenged hearsay statements were admissible under Rule 804(b)(5), which we set out in the margin,[1] an exception that Congress intended to be restricted to hearsay declarations with "high probative value" and to "be used very rarely, and only in exceptional circumstances." S.Rep. No. 1277, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 7051, 7066. Given the evidence that mesothelioma is caused only by exposure to asbestos and that O'Brien's only exposure was in the Brooklyn Navy Yard, admission of both hearsay statements was, if error, harmless. Neither added anything of substance to plaintiff's powerful case that exposure to asbestos in the Brooklyn Navy Yard was the cause of O'Brien's disease or created additional hypotheses regarding causation that might have led to the jury's verdict. Nor did either statement enhance plaintiff's case regarding exposure to Philip Carey products. They did not therefore affect "a substantial right." Fed.R.Evid. 103(a).

CONCLUSION

For the foregoing reasons, the judgment against Celotex is affirmed. The cross-appeal is still pending but subject to the automatic bankruptcy stay.

---

1. Fed.R.Evid. 804(b)(5) provides:
   *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.