**In Re JOINT EASTERN AND SOUTH-ERN DISTRICT ASBESTOS LITI-GATION.**

**Agnes GREGER, Individually and as Executrix of the Estate of John J. Greger, deceased, Plaintiff,**

**v.**

**OWENS-CORNING CORPORATION, Defendant.**

**No. 87 Civil 5286 (RWS).**

United States District Court,
S.D. New York.

May 7, 1997.

Weitz & Luxenberg, P.C., New York City, for Plaintiff; Bryan Belasky, of counsel.

Tucker & Goldstein, Boston, MA, for Defendant; Bruce G. Tucker, of counsel.

### *OPINION*

SWEET, District Judge.

Owens-Corning Corporation, defendant in this asbestos litigation, has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 dismissing the claim brought against it by the widow of John J.

Greger. For the reasons set forth below, the motion is denied.

### Parties

Owens-Corning Corporation, ("OC"), formerly manufactured asbestos products.

Agnes Greger, ("Plaintiff"), was married to John J. Greger ("Greger"). During his lifetime, Greger worked for Western Union. As part of his duties, Greger would inspect repair work on ships owned by Western Union.

### Prior Proceedings

Greger's asbestos claim, naming several defendants including OC, was filed in federal court on August 8, 1989. An Amended Verified Complaint was filed on January 29, 1997. On March 24, 1997, OC sent Plaintiff's counsel a request for dismissal, on the ground that Greger's deposition transcript provided no identification of OC's products at Greger's worksite. On March 25, 1997, OC moved for summary judgment. Oral argument was heard on April 23, 1997, and the motion was considered fully submitted.

### Facts

According to the Plaintiff, Greger was exposed to asbestos fibers from OC's asbestos-containing products while working at the Halifax Shipyard from 1956 through 1966. During each of these years, Greger would travel to Halifax, Nova Scotia for his employer, Western Union, and spend approximately three months overseeing repair work on ships. Greger testified at his deposition that during this time he was exposed to asbestos in the engine rooms and boiler rooms of ships at Halifax.

At Greger's deposition of June 27, 1990, he stated that he did not recall seeing any OC product in the Halifax shipyards. The sections of Greger's deposition cited by OC are as follows:

Q: Have you ever heard of Owens Corning Fiberglas?

A: Yes.

Q: And how have you heard of them?

A: One bought out the other. I think Owens Corning bought out Owens Illinois Fiberglas.

Deposition of John G. Greger, June 27, 1990, at 166.

Q: Have you ever heard of Kaylo Products? [asbestos product distributed by Owens Corning in Canada]?

A: Probably, but I am not sure.

*Id.* at 169.

OC has also cited from the deposition of one of the Plaintiff's witnesses, Keith Dempsey, ("Dempsey"), who testified with respect to the arrival of Kaylo at the Halifax Shipyard in the late 1970s or 1980s, well after Greger last visited the Shipyard. Dempsey worked for Guildfords, a distributor of asbestos products supplied by Fiberglas Canada, a subsidiary of OC:

Q: What Owens–Corning fiberglass products did you sell during this time period [after 1968]?

A: Well, we sold or I was involved in the sale of all the Fiberglas Canada products. Now I'm trying to think of the date when their Kaylo product came on the market and we were the largest distributor in Canada for Fiberglas Canada products ... So in the Canadian side of things, you know, they were all fiberglass products until Kaylo came out, which is a high temperature product, and this was something new that Owens–Corning were getting involved in the manufacture of. So that product was distributed by our company.

Q: Do you recall generally when that was when Kaylo came?

A: Oh, gosh. *Late '70s Probably. Somewhere like that. I can't remember the exact time but late '70s. early '80s probably somewhere.*

Deposition of Keith Dempsey, April 25, 1995 at 13–14 (emphasis added).

Dempsey testified in three other sections with respect to the identification of OC's asbestos products at the Halifax shipyard during the years of Greger's tenure, 1956–1966.

In the first section, Dempsey testified that he recalls selling OC products to the Halifax Shipyard between 1958 and 1968:

Q: As you sit here today, Mr. Dempsey, do you have a specific memory of selling any Owens–Corning products to the Halifax Shipyards between 1958 and 1968?

A: Under the name of Fiberglas Canada. Not Owens–Corning.

Q: Okay. And what kind of products were those?

A: Oh, they were ropes, glass ropes, pipe insulations, primarily made of the fiberglass at that point in time, and blocks, various types of duct insulations.

*Id.* at 17.

In the second section, during a rather confused exchange, Dempsey also recalled that asbestos products were included in products distributed for OC's subsidiary in 1958:

Q: ... If this happened during 1958, could you say how much Owens–Corning product you sold?

A: How much?

Q: Yes.

A: All I know that Fiberglas Canada was one of the largest companies that we dealt with in insulation products. In general, that is.

Q: Okay. But you don't know—You couldn't estimate how much, you know, in either cubic feet or lineal feet were sold?

A: Oh gosh. No I couldn't.

Q: To any particular job site?

A: No, no, no.

Q: And, in fact, the Fiberglas Canada products that you sold, the asbestos containing pipe coverings, were just one of the products?

A: What was the question again, I'm sorry.

Q: Of the specifics we're talking about ... Fiberglas Canada ... Of that Company's products, the asbestos containing pipe covering which is one of the insulation products that you sold?

A: That's correct. Right. Yes.

*Id.* at 19.

In the third section, Dempsey also stated that Kaylo was one of several different asbestos products distributed between the years 1958 and 1992:

Q: About how many different kinds of asbestos containing pipe covering did Guildfords sell between 1958 and 1992?

A: I would guess eight or nine probably.

Q: And could you tell me the different names of the asbestos containing pipe covering that Guildfords sold between 1958 and '92, the ones that you can remember?

Q: Atlasite, A-t-l-a-s-i-t-e, Newtherm, Thermo 12, *Kaylo,* Aircel—

*Id. at* 31 (emphasis added).

### *Discussion*

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court is not expected to resolve disputed issues of fact, *Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987), but to determine whether there are any factual issues which require a trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1354, 89 L.Ed.2d 538 (1986). The court must view the evidence in the light most favorable to the non-moving party. *O'Brien v. National Gypsum Co.,* 944 F.2d 69, 72 (2d Cir.1991). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1356. This is particularly true when the issue is one on which the opponent of summary judgment would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Plaintiff has the burden of proving that he was exposed to OC's products, and that it is more likely than not that this

exposure was a substantial factor in his injury. *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1285–86 (2d Cir.1990); *In re Joint Eastern and Southern Districts Asbestos Litigation,* 1993 WL 97301 *1 (March 30, 1993 S.D.N.Y..) (hereinafter *Asbestos Litigation* ). In order to establish proximate causation by OC's asbestos product, plaintiff must produce evidence identifying that product as a factor in his injury. *Johnson,* 899 F.2d at 1286; *Hymowitz v. Eli Lilly & Co.,* 73 N.Y.2d 487, 507, 541 N.Y.S.2d 941, 539 N.E.2d 1069 (1989); *Asbestos Litigation, supra* at *1. Circumstantial evidence may be sufficient to meet this burden. *O'Brien,* 944 F.2d at 72 (citing *Prunier v. City of Watertown,* 936 F.2d 677 (2d Cir.1991)); *Johnson,* 899 F.2d at 1286–87 (circumstantial evidence sufficient to uphold jury verdict).

When the plaintiff himself cannot identify the defendant's product, courts have accepted the testimony of others who were present on the job site concurrently with the plaintiff as sufficient circumstantial proof. *Kreppein v. Celotex Corp.,* 969 F.2d 1424, 1426 (2d Cir.1992) (plaintiff produced testimony from co-workers who identified defendant's asbestos product during the time decedent was working; Second Circuit held evidence sufficient to uphold a jury verdict); *In re Joint Eastern and Southern Districts Asbestos Litigation,* 798 F.Supp. 925 (S.D.N.Y.1992) (plaintiff produced testimony by insulation supervisor who could identify the defendants' product during time decedent was working).

■ If testimony from others does not match the place and time during which the plaintiff worked, summary judgment for the defendant must be granted. In *Asbestos Litigation,* 1993 WL 97301, the plaintiff could not identify the defendant's product among any of the products with which he worked, but submitted identification by employees who worked at the same site, and testified that the defendant's product was "regularly used throughout the shipyard during the period 1940–1942." *Id.* at *1. The plaintiff, however, worked at the site from 1943 to 1945. The Court granted summary judgment to the defendant:

> [T]he mere fact that products stocked during the calendar year 1942 may have been still around for use in 1943 is, by itself, only a hypothesis, and does not supply evidence that the material was used in proximity to [plaintiff] ... Here, the plaintiff cannot show any genuine issue of fact, for the witnesses identifying the product to which [plaintiff] was exposed were not present at the shipyard during the years in which [plaintiff] worked there.

*Id.* at *3.

The section of Dempsey's deposition stating when Kaylo was first sold lends strong support for summary judgment. Dempsey explicitly testified that Kaylo was not distributed until the late 1970s or 1980s, well after Greger had ceased work at the Halifax Shipyard. The deposition section offered by Plaintiff, in which Dempsey testified that Kaylo was in use during the period of 1958 to 1992, does not contradict OC's contention. Products distributed in the late 1970s have also been distributed between 1958 and 1992.

However, in the second section offered by Plaintiff, Dempsey seemed to contradict his later assertion that Kaylo was unavailable until the late 1970s. In this section, Dempsey is asked whether "during 1958" he could state the amount of OC product sold in Halifax:

Q: ... If this happened during 1958, could you say how much Owens–Corning product you sold?

A: How much?

Q: Yes.

A: All I know that Fiberglas Canada was one of the largest companies that we dealt with in insulation products. In general, that is.

Q: Okay. But you don't know—You couldn't estimate how much, you know, in either cubic feet or lineal feet were sold?

A: Oh gosh. No I couldn't.

Q: To any particular job site?

A: No, no, no.

Q: And, in fact, the Fiberglas Canada products that you sold, the asbestos containing pipe coverings, were just one of the products?

A: What was the question again, I'm sorry.

Q: of the specifics we're talking about ... Fiberglas Canada ... Of that Company's products, the asbestos containing pipe covering which is one of the insulation products that you sold?

A: That's correct. Right. Yes.

*Id.* at 19. In this prolonged and confused exchange, it is unclear whether the time period in the question was apparent to Dempsey. He asked for clarification of the question, but the time period was not repeated. If Dempsey did mean to testify that OC's asbestos product was in use in 1958, such testimony would establish the presence of the product during the time that Greger worked in the shipyard.

The role of this Court in deciding a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there are any factual issues which require a trial. Viewing the evidence in the light most favorable to the non-moving party, the ambiguity offered in Dempsey's testimony raises an issue of fact as to whether OC's asbestos product was in use at the Halifax Shipyard during the years of Greger's tenure. OC's summary judgment motion must therefore be denied.

### Conclusion

On the facts as supplied by the parties, Plaintiff has put forth evidence sufficient to establish an issue of fact as to whether Greger was exposed to OC's product. For these reasons, OC's motion for summary judgment is denied.

It is so ordered.